UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

XIHUI HUANG ,

                    Petitioner,

        v.

TODD BLANCHE, et al.,

                    Respondents.

CASE NO. 2:26-cv-02157-BAT

**ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS**

Petitioner was arrested in June 2026 and has been in immigration detention since then. Dkt. 1 ¶ 30; Dkt. 7-1. She filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. Dkt. 1. She argues that her detention is unlawful because Respondents violated her constitutional right to due process. *Id.* The Court agrees and therefore **GRANTS** the petition and **ORDERS** Petitioner's immediate release.

**BACKGROUND**

Petitioner is a citizen of China who was admitted into the United States as a nonimmigrant visitor for pleasure with authorization to remain in the United States for a temporary period not to exceed November 13, 2015. Dkt. 6 ("Baz Decl.") ¶ 5; *see* Dkt. 1-4 (Visa). In October 2015, Petitioner filed an application for asylum with U.S. Citizenship and Immigration Services ("USCIS"). Baz Decl. ¶ 6; Dkt. 1-6 (Application for Asylum). Petitioner

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS - 1

did not depart the country at the expiry of her tourist visa. Baz Decl. ¶ 7.

In March 2019, Petitioner was arrested by Oregon law enforcement authorities for state-law charges of laundering monetary instruments, promoting prostitution, criminal conspiracy, and racketeering.[1] Baz Decl. ¶ 9. In August 2021, Petitioner was convicted of ORS 161.450(2)(b): Conspiracy to Commit a Class B Felony – Laundering a Monetary Instrument (ORS 164.170). Dkt. 1-11, at 22–27. She was sentenced to 20 days of imprisonment and 24 months of probation and was ordered to pay a compensatory fine. Dkt. 1-11, at 23–24. Petitioner has complied with her sentencing requirements, served her time, and has no additional criminal history. Dkt. 1 ¶ 25; Dkt. 1-11, at 28.

In November 2022, USCIS referred Petitioner's asylum application to the Executive Office of Immigration Review ("EOIR"), placing Petitioner in removal proceedings and scheduling her for an Immigration Court hearing on March 5, 2024. Dkt. 1-11, at 9. In the Notice to Appear ("NTA"), the government noted that Petitioner had "been admitted to the United States, but [is] removable" because "after admission as a nonimmigrant under Section 101(a)(15) of the Act, [she has] remained in the United States for a time longer than permitted." *Id.* Respondents state that Petitioner appeared multiple times for removal proceedings that were continued at Petitioner's request on March 3, 2024, August 19, 2024, November 20, 2024, and March 3, 2025.[2] Baz Decl. ¶ 13. Petitioner's removal proceedings remain pending before EOIR.[3]

---

[1] Deportation Officer ("DO") Gennadiy Baz bases this statement on reviewed records without attaching those records. Baz Decl. ¶ 3. Petitioner does not, however, contradict this statement. *See, e.g.*, Dkt. 1-13, at 1. The amended information states that the underlying conduct occurred on December 24, 2018. Dkt. 1-11, at 26.

[2] Petitioner also states that she appeared for a subsequent immigration court hearing on July 25, 2025. Dkt. 1 ¶ 28.

[3] Although Respondents state, without citing a source, that an immigration judge found Petitioner to be removable on August 19, 2024, Baz. Decl. ¶ 13, they do not contradict

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS - 2

Dkt. 1 ¶ 36.

Meanwhile, in January 2023, Petitioner married her current spouse, a United States citizen. Dkt. 1-7. In April 2023, Petitioner's husband filed an I-130 Petition for Alien Relative with USCIS, listing Petitioner as the beneficiary. Dkt. 1-9. USCIS scheduled Petitioner and her spouse for an interview on June 2, 2026 regarding their pending marriage-based petition. Dkt. 1-9, at 2. Their attorney for this application, Daniel J. Smith, was present at this June 2, 2026 USCIS interview when Petitioner was abruptly arrested. Dkt. 1-11, at 54 (Smith Decl.) ¶ 2–3. Mr. Smith states that no one indicated that the I-130 application was denied, the interviewing officer suggested that USCIS would be requesting additional information, no decision on the I-130 application has been received and, as of mid-June 2026, the USCIS online status page indicated that the I-130 petition was pending. Smith Decl. ¶¶ 3–6; Dkt. 1-11, at 55 (Case Status Online).

On the Form I-213 (Record of Deportable/Inadmissible Alien), the arresting officers are therefore incorrect that "USCIS officers denied [Petitioner's] I-130 application," and Respondents do not suggest that Petitioner's I-130 application has ever been denied. Dkt. 7-1, at 3. The arresting officers noted that Petitioner "was admitted to the US at Honolulu, Hawaii as a nonimmigrant Visitor for Pleasure (B2) with authorization to remain in the United States for a temporary period," was issued a Notice to Appear in November 2022, and was taken into custody during her immigration proceedings "due to prior felony charges." *Id.*

On June 17, 2026, an immigration judge ("IJ") held a bond hearing at Petitioner's request. Dkt. 7-3. The ALJ denied bond because Petitioner failed to establish that she is not a

---

Petitioner's assertion that no final order of removal exists. As Respondents themselves note, removal proceedings took place several times after August 2024. *Id.*

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS - 3

danger to the community or a flight risk. *Id.* at 2. There is no audio recording or transcript of the proceedings. Petitioner's attorney Aaron L. Vasey stated:

> Despite the evidence filed in support of [Petitioner's] bond request, the IJ took issue with the fact that the police reports from [Petitioner's] arrest in 2018[4] were not submitted as evidence. The judge indicated that requesting bond without providing these reports forced him to make a custody decision in a "vacuum" and would result in him finding that [Petitioner] had not met her burden to demonstrate that she is not a danger or a flight risk.

Dkt. 1-13, at 1–2 (Vasey Decl.) ¶ 4. To this date, Petitioner has yet to appeal this bond decision. Petitioner remains in custody at the Northwest ICE Processing Center (NWIPC") in Tacoma, Washington.

## DISCUSSION

The Court finds that Petitioner's detention in the absence of a pre-deprivation hearing does not comport with the constitutional due process requirements applicable to a person detained under 28 U.S.C. § 1226(a). The Court also finds that prudential exhaustion of administrative remedies is not required and that the IJ abused his discretion and violated the Due Process Clause by failing to apply the proper legal standards regarding the bond determination of flight risk or danger to the community.

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas

---

[4] As set forth earlier, Respondents suggest without citation that the arrest occurred on March 12, 2019. Baz Decl. ¶ 9.

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS - 4

corpus may be granted to a petitioner who demonstrates that he or she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. See *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

## I.     Petitioner Is Detained Under 8 U.S.C. § 1226(a)

Respondents allege that Petitioner is currently detained under 8 U.S.C. § 1225(b)(2)(A) because she is an "applicant for admission." Dkt. 5, at 5. This contention is contradicted by Respondents' acknowledgment that "Petitioner was admitted into the United States," Dkt. 5, at 2,

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS - 5

and by the NTA in pending removal proceedings in which the government asserts that Petitioner has "been admitted to the United States, but [is] removable" because "after admission as a nonimmigrant under Section 101(a)(15) of the Act, [she has] remained in the United States for a time longer than permitted." Dkt. 1-11, at 9. Respondents' rationale for applying § 1225(b)(2)(A) to Petitioner is so devoid of relevant detail or facts that it appears to have been written with reference to another person altogether. *See* Dkt. 5, at 4–6.

The Court finds that Petitioner's current detention is governed by 8 U.S.C. § 1226(a). *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention."). Although the arresting agents referred to Petitioner being detained "due to prior felony charges," Dkt. 7-1, at 3, Respondents do not here assert that her conviction serves as the statutory basis for custody, and the NTA issued a year after her conviction refers only to Petitioner being removable for having overstayed her tourist visa, Dkt. 1-11, at 9.[5]

## II.      Petitioner's Detention Violates Due Process Under *Mathews* Test

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and

---

[5] Although Respondents do not assert mandatory custody under 8 U.S.C. § 1226(c), that section also does not appear to apply here. Petitioner is not "inadmissible" for having committed an offense covered in 8 U.S.C. § 1182(a)(2); rather, she is "deportable." *Compare* 8 U.S.C. § 1226(c)(1)(A) *with* 8 U.S.C. § 1226(c)(1)(C). As a "deportable" noncitizen, mandatory custody would apply had Petitioner committed a crime of moral turpitude, like conspiracy to commit money laundering, and been sentenced "to a term of imprisonment of at least 1 year." 8 U.S.C. § 1226(c)(1)(C). Petitioner was sentenced to a term of imprisonment of 20 days. Dkt. 1-11, at 23.

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS - 6

in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due generally requires consideration of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). Many courts in this circuit have recently applied *Mathews* when considering immigration habeas petitions, including those brought in the visa overstay context. *See, e.g.*, *Ruslanov v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-01459-JLT-EGC (HC), 2026 WL 1362961, at *3–5 (E.D. Cal. May 15, 2026).

The parties agree that *Mathews'* three-part test applies here to evaluate whether Petitioner's detention without a pre-deprivation hearing violated her right to procedural due process. Dkt. 1 ¶¶ 51–58; Dkt. 5, at 7–9. The Court finds that all three of the *Mathews* factors favor Petitioner.

### A.     Petitioner Has a Protected Interest in Her Liberty

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi*, 542 U.S. at 529. That Petitioner was arrested in the middle of her scheduled interview for an I-130 marriage-based petition, and remains detained weeks later, demonstrates the deprivation of a constitutionally protected interest in her liberty. *See Hernandez v. Sessions*, 872 F.3d 976,

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS - 7

981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *A.B.J.C. v. Hermosillo*, No. 2:26-cv-00185-JNW, 2026 WL 497097, at *3 (W.D. Wash. Feb. 23, 2026) (where government had acquiesced in petitioner's continued liberty for six years, petitioner's reliance on his freedom created a liberty interest that "cannot be extinguished without due process").

The government could have detained Petitioner at any time after the expiration of her visa in 2015, but did not do so until years later, after Petitioner developed significant ties to the United States. Petitioner's interest in maintaining her liberty is therefore strong, in the absence of evidence that she is a flight risk or a danger to the community. *See, e.g.*, *Carriollo v. Albarran*, No. 3:26-cv-05836-JSC, 2026 WL 1734895, at *2 (N.D. Cal. June 16, 2026). Although Petitioner was convicted in 2021 of conspiracy to commit money laundering, the government did not place Petitioner into removal proceedings until over a year later, did not refer to that criminal conviction as the basis for her removal, and did not detain Petitioner until she had attended numerous scheduled hearings and was being interviewed regarding an application related to her marriage to a U.S. citizen that had occurred years beforehand. The Court finds that the first *Mathews* factor strongly favors Petitioner.

**B.      The Risk of Erroneous Deprivation of Liberty Is High**

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court agrees with Petitioner that the risk of erroneous deprivation in the absence of a pre-detention hearing is high.

Here, Petitioner was not provided any notice or opportunity to be heard before she was arrested at a scheduled interview regarding her marriage-based I-130 petition. The absence of

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS - 8

pre-deprivation procedural safeguards leads to a high risk of an erroneous deprivation of Petitioner's liberty. Accordingly, the Court finds that the second *Mathews* factor favors Petitioner. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).

Although Respondents contend that Petitioner received a bond hearing two weeks after her detention, the Court finds that such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it occurs after the fact and cannot prevent an erroneous deprivation of liberty.[6] *Domingo v. Kaiser*, No. 25 cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").

**C.      The Government Interest in Denying a Pre-Detention Hearing Is Low**

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a pre-deprivation hearing.

Although it would require the expenditure of finite resources (money and time) to provide Petitioner notice and a hearing before arresting and detaining her, those costs are outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g., Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). The Court finds that Respondents' interest in detaining Petitioner without a pre-detention hearing is minimal: any administrative or financial burdens in providing

---

[6] As discussed below, the Court also finds that administrative exhaustion is not required and that the IJ abused his discretion and violated due process by failing to apply the proper legal standards regarding the bond determination of flight risk or danger to the community.

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS - 9

a pre-detention hearing to Petitioner are outweighed by the risk of erroneous deprivation of the liberty interest at issue. The third and final *Mathews* factor favors Petitioner.

As the Court's review of the *Mathews* factors suggests, Petitioner's detention does not comport with due process.

**III.    Prudential Exhaustion Is Not Required and the IJ Abused His Discretion and Violated Due Process**

Respondents argue that Petitioner has already received all the process to which she is due via a bond hearing held two-weeks after her June 2, 2026 detention and, in any event, she is required to exhaust her administrative remedies before bringing this habeas petition. The Court finds both that prudential exhaustion is not required and that the IJ abused his discretion and violated due process by denying bond without considering the relevant factors.

**A.    Prudential Exhaustion**

Petitioner received a bond hearing on June 17, 2026, and has yet to appeal that decision to the Board of Immigration Appeals ("BIA"). Dkt. 7-3. Respondents argue the Court should, as a prudential matter, require Petitioner to exhaust her administrative remedies, and should dismiss the petition for her failure to do so. Dkt. 5 at 9–10. In the context of habeas review under 28 U.S.C. § 2241, exhaustion of administrative remedies is prudential rather than jurisdictional. *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011), *abrogation on other grounds recognized by Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v.*

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS - 10

*Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). Exceptions to the exhaustion requirement include "situations . . . where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981). Similarly, the exhaustion requirement is waived where the petitioner is "challenging issues other than the BIA's ruling on removability." *Laing v. Ashcroft*, 370 F.3d 994, 1001 (9th Cir. 2004) (citing *Marquez v. INS*, 346 F.3d 892 (9th Cir. 2003)).

Here, with respect to the first factor, Respondents argue the BIA has specialized expertise in immigration bond determinations. Dkt. 5 at 10. But the actual issue in this case is whether the bond hearing was legally and constitutionally defective. Although the BIA may have general subject-matter expertise in immigration custody and bond matters, it has no special expertise in resolving the constitutional and legal questions presented here. *See W.T.M. v. Bondi*, Case No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *2 (W.D. Wash. Jan. 20, 2026); s*ee also Garcia v. Hyde*, Case No. 25-CV-585-JJM-PAS, 2025 WL 3466312, *7 (D.R.I. Dec. 3, 2025) (the petitioner "ultimately raises a constitutional challenge in his habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile"). The first factor weighs against requiring prudential exhaustion.

With respect to the second factor, Respondents argue that excusing exhaustion in this context is inappropriate because the case does not involve a discrete legal issue that would provide legal guidance for future administrative proceedings and would undermine the administrative scheme and incentivize deliberate bypass of the BIA to seek de novo review in district court. Dkt. 5 at 10. Although relaxation of prudential exhaustion may, to some extent, encourage others to bypass the administrative appellate procedures, this case presents a legal

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS - 11

question about whether the bond hearing met statutory and constitutional requirements, not a request for de novo review of the IJ's discretionary bond determination. *See Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025). Thus, contrary to Respondents' suggestion, a decision would likely "be beneficial to provide the specific immigration court, which regularly handles bond hearings, with guidance on the types of circumstances that may lead to a finding of constitutional deficiency." *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *4 (W.D. Wash. Apr. 10, 2026). This factor weighs neutral.

With respect to the third factor, Respondents argue that administrative review is likely to correct errors and obviate the need for judicial intervention. Dkt. 5 at 10. However, the Court finds no reason to delay review in a case where the claim is that statutory and constitutional errors have resulted in continued detention. Moreover, given the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury if she is required to wait for a BIA decision before being permitted to file a habeas claim. *See Scott v. Wamsley*, Case No. 2:25-cv-1819-TMC, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025) ("Courts in this Circuit have regularly waived exhaustion requirements for noncitizens who face 'irreparable injury' from being detained for 'months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal.") (quoting *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019)). And finally, Petitioner "ultimately raises a constitutional challenge in [her] habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile." *Garcia v. Hyde*, Case No. 25-CV-585-JJM-PAS, 2025 WL 3466312, at *7 (D.R.I. Dec. 3, 2025) (citing *Matter of Cruz de Ortiz*, 25 I&N Dec. 601, 605 (BIA 2011) ("[N]either we nor the Immigration Judges have authority to rule on the constitutionality of the statutes we

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS - 12

administer.")); *see also Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 238 (W.D.N.Y. Jan. 16, 2019) (waiving exhaustion requirement because "the BIA does not have jurisdiction to adjudicate constitutional issues")). The third factor weighs against requiring prudential exhaustion.

Accordingly, the Court finds it appropriate to waive any requirement that Petitioner exhaust her administrative remedies before seeking habeas relief.

**B.      Abuse of Discretion and Due Process in the Bond Hearing**

The Court already has determined that offering Petitioner a post-deprivation hearing cannot serve as an adequate procedural safeguard because it occurs after the fact and cannot prevent an erroneous deprivation of liberty. *See supra* Part II. The Court nevertheless also finds that at the June 17, 2026 bond hearing, the IJ abused his discretion and violated due process protections by failing to apply the correct legal standard.

This Court's habeas review of the IJ's determination as to dangerousness and flight risk is for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 779, 784-85 (9th Cir. 2024). Under an abuse of discretion standard, the court cannot reweigh evidence; the Court can determine only whether the correct legal standard was applied. *Id.* at 785 (citing *Konou v. Holder*, 750 F.3d 1120 (9th Cir. 2014)).

Petitioner argues the IJ violated her right to due process by failing to conduct an individualized custody determination. When determining whether a noncitizen is a danger to the community or risk of flight, the IJ weighs nine factors pursuant to BIA precedent. *K.G.M.Q. v. Bondi*, No. 2:26-CV-00506-TL, 2026 WL 962609, at *11 (W.D. Wash. Apr. 9, 2026) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) and *Martinez*, 124 F.4th at 783)). These nine factors that an IJ may consider include any or all of the following:

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS - 13

(1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Martinez*, 124 F.4th at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). These factors "grant an IJ broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative." *Id*. at 783–84.

There is no audio recording or transcript of the bond hearing so the Court must rely upon the recollection of Petitioner's attorney to determine what, if any, factors the IJ weighed. Petitioner's attorney stated that the IJ found that Petitioner had not met her burden to demonstrate that she was not a danger or flight risk because the police reports from Petitioner's 2019 were not submitted as evidence. Vasey Decl. ¶ 4. Petitioner's attorney highlighted the portions of the evidence that supported the conclusion that Petitioner was not a danger to the community of a flight risk: a WATCH criminal history report confirming that Petitioner had never been arrested in Washington State despite residing there for over five years; Petitioner's history of attendance at prior court hearings, including two hearings before the Seattle Immigration Court in 2024 and 2025; Petitioner's eligibility for an adjustment of status based on marriage, which provided a strong motivation not to commit any crimes or abscond; the willingness for Petitioner's family to post a $25,000 bond; and information about where Petitioner would work and reside if released. Vasey Decl. ¶¶ 5–6. According to the uncontested account of Petitioner's attorney:

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS - 14

> The IJ did not address the evidence presented . . . in support of her bond request or how it was insufficient for her to meet her burden. Instead, the judge insisted that there must be highly prejudicial facts in the police reports if they were not filed as evidence, and that failure to file this evidence meant that [Petitioner] had not met her burden. As such, the judge denied bond and found that [Petitioner] constituted both a flight risk and a danger to the community.

Vasey Decl. ¶ 8. In other words, the IJ declined to weigh any factors that weighed against flight risk or danger to the community, relying instead on evidence that was not on the record to conclude that its absence meant that Petitioner was clearly a flight risk and a danger to the community. Such a speculative analysis devoid of consideration of the record constitutes both an abuse of discretion and a violation of due process.

Additionally, the bond order reflects the IJ checked the box that indicated that ability to pay was considered but did not indicate consideration of alternative conditions that might mitigate flight risk. Dkt. 7-3. An IJ must consider a noncitizen's financial circumstances and whether alternative conditions could mitigate flight risk. *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Failure to do so would create a system of immigration bond determinations that does not adequately provide a reasonable connection between detention and legitimate government interests. *Id.* Here, the IJ denied bond without considering alternative conditions of release. The IJ thus failed to provide any connection between the decision to deny bond and the government's interest in detaining Petitioner. The IJ's failure to consider alternative conditions of release leaves Petitioner's detention unconnected to any legitimate government interest.

In sum, the IJ failed to provide a meaningful rationale for his findings of flight risk and dangerousness and failed to engage with the factors weighing for or against such findings. By failing to accord Petitioner the process due to her, the IJ abused his discretion and violated Petitioner's Fifth Amendment rights. *See, e.g. Segura Serrano v. Scott*, Case No. 2:26-cv-01268-

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS - 15

LK, 2026 WL 1674357 (W.D. Wash. June 1, 2026); *Moreno Porra v. Hernandez*, Case No. 2:26-cv-1164-BAT (W.D. Wash. May 21, 2026).

## IV.    Remedy

Having determined that Petitioner's detention violates his constitutional right to due process, the Court finds Petitioner's detention to be unlawful and will grant the habeas petition. "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id*. (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."). Courts have granted habeas petitions and ordered immediate release of petitioners arrested for visa overstay without a pre-detention hearing, and the government's return does not address or attempt to distinguish this authority. *See, e.g.*, *Carriollo*, 2026 WL 1734895, at *3; *Kalkan v. Chestnut*, No. 1:26-cv-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026) (citing *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026)). As in those cases, the Court has found that Petitioner has a protected liberty interest because the Government did not promptly detain Petitioner when her visa expired and thus acquiesced in her continued liberty. In these circumstances, the Court concludes that immediate release is the appropriate remedy for the constitutional violation here.

## CONCLUSION

For the forgoing reasons, the Court **ORDERS**:

1.      Petitioner's petition for writ of habeas corpus (Dkt. 1) is **GRANTED**.

2.      Respondents shall **RELEASE** Petitioner with reasonable conditions within 24 hours of the date and time this Order is filed.

3.      Respondents shall file a **CERTIFICATION** that Petitioner has been released no later than 48 hours from the date and time this Order is filed.

4.      Petitioner's counsel may move for EAJA fees and costs consistent with the law and the statute.

5.      The Clerk shall provide a copy of this order to all counsel.

DATED this 15th day of July, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS - 17